UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KINGSWAY CAPITAL PARTNERS, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>MARIA SOSA,<br><br>    Defendant. | Case No. 15-cv-03138-RS<br><br>**ORDER AFFIRMING JUDGMENT OF THE BANKRUPTCY COURT AND DENYING KINGSWAY'S REQUEST FOR A TEMPORARY RESTRAINING ORDER** |

## I.  INTRODUCTION

This bankruptcy appeal began as a dispute between a tenant, appellant-debtor Kingsway Capital Partners, LLC, and its landlord, appellee Maria Sosa. After Kingsway's sole owner-member, president, and responsible individual, Nathanial Sobayo, interacted with Sosa's insurance inspector in an unprofessional manner and filed questionable monthly operating reports, the bankruptcy court issued an order to show cause why the case should not be dismissed or converted to Chapter 7 bankruptcy pursuant to 11 U.S.C. § 1112(b)(1). When Kingsway's responses proved to be unsatisfactory, the court having lost all confidence "in the veracity or competence of [Sobayo]," dismissed the chapter 11 case. Appellant App'x ("AA") at 989.

Kingsway filed this timely appeal, advancing numerous theories as to why the bankruptcy court abused its discretion by dismissing Kingsway's chapter 11 bankruptcy, none of which carries the day. Thus, the bankruptcy court's order of dismissal is affirmed. Subsequently, on

January 4, 2016, Kingsway filed an application for a temporary restraining order ("TRO"), seeking to stay the bankruptcy court's dismissal, which would reinstate the automatic stay of all judicial actions against it, in particular Sosa's detainer action pending in state court. Because Kingsway has not succeeded on the merits of its appeal, the application for a TRO must also be denied.

## II.   FACTS AND PROCEDURAL HISTORY

At the mid-point of Kingsway's five-year lease of a commercial space from building owner Maria Sosa, a heavy rainfall resulted in damage to the rental space as well as personal property belonging to Sobayo and Kingsway. AA at 378. Sobayo sought compensation for the damage and requested that Sosa repair the rental space. When Sosa did not do so, Sobayo withheld rent. Sosa filed a detainer action to which Sobayo responded with another lawsuit for damages in San Mateo County Superior Court. Shortly thereafter, Kingsway filed for Chapter 11 bankruptcy, thereby staying further proceedings in state court. AA at 814.

During the course of ensuing proceedings in the bankruptcy court, Sosa was granted permission to conduct an insurance inspection at the leased property. AA at 589. When the insurance inspector arrived at the property, Sobayo refused to admit him or to admit Sosa, or Sosa's attorney into the premises. Sobayo barricaded the door and insisted they show identification. AA at 701. In addition, Sobayo arranged for a process server to serve Sosa's insurance inspector with a subpoena—an unfortunate incident that ended with the process server throwing the subpoena at the inspector's back. *Id.*

Following this ordeal, Sosa filed a motion for sanctions, which the bankruptcy court granted. AA at 697. The next day, the bankruptcy court issued an order to show cause why the case should not be dismissed or converted to Chapter 7 or have a Chapter 11 trustee appointed, citing gross mismanagement, failure to maintain insurance, and failure to comply with court orders. AA at 701-03. In response, Kingsway submitted a proof of insurance, which listed Happy Days Protective Patrols, Inc.—not Kingsway—as the insured under the policy. *See* AA at 728; 830-80. Kingsway also submitted a repayment plan to pay all creditors in full over a twelve-month period, *see* AA 804-27, to which Sosa filed objections, *see* AA at 900-08. According to the

terms of the proposed plan, there are three unsecured creditors: American InfoSource, LP, an agent for DirecTV; the California Franchise Tax Board; and Sosa. AA at 693. Kingsway owes these creditors $320.00, $966.00, and $8,750.00 respectively. *Id.*

At a hearing on June 4, 2015, the bankruptcy court addressed Kingsway's response to the order to show cause. It began the hearing by making the following statement:

> I understand that the Debtor may have rectified some of the issues that I identified in my order to show cause, but the point is that those problems never should have existed in the first place. And this can't be a continued exercise in the Debtor failing to fulfill its fiduciary obligations and then begging for forgiveness. I expect those obligations to be satisfied without the need for me to be constantly hammering on someone to do right by this process and by its creditors. And to be quite frank, in reviewing the April monthly operating report, there continue to be serious issues here, and these are all disclosed in the operating report.

AA at 1105. The bankruptcy court identified additional causes for concern. For example, the court noted numerous transactions in the monthly operating reports, suggesting that Kingsway was paying Sobayo's personal obligations or the obligations of third parties. *See* AA at 1106-07. In addition, the bankruptcy court noted that at least one operating report indicated vaguely that "someone . . . invested in the business." AA at 1107. The court remarked that this ambiguous report was "the kind of gross mismanagement and frankly sketchy activity that" caused the court "not to trust [Sobayo]." *Id.* The court agreed to give Sobayo one additional opportunity to rectify the problems by June 18, 2015. AA at 1109. The bankruptcy court filed an amended order to show cause why the case should not be dismissed or converted, giving Kingsway ten days to respond. AA at 920-23. Specifically, the bankruptcy court required Kingsway to address numerous issues, including the nature of the relationship between Kingsway and Happy Days Protective Patrol, the source of cash receipts, the nature of Kingsway's business, and information about various transactions listed in Kingsway's monthly operating reports. *See* AA at 920-23. In addition, the bankruptcy court declined to accept Kingsway's proposed repayment plan. AA at 913.

Kingsway responded to the bankruptcy court's amended order to show cause and appeared through counsel at the hearing. *See* AA at 925-83, 987. Apparently, Kingsway's "response to the

. . . amended order to show cause . . . raise[d] more concerns than [it] resolved." AA at 1211. During the hearing, the bankruptcy court asked numerous questions about how Kingsway derives its income. *See* AA at 1212-13. In the end, the court concluded that there was "no evidence that there are in fact rental agreements with customers of Kingsway." AA at 1213. In addition, the bankruptcy court observed that Kingsway "appear[ed] [not] to be keeping the Happy Days funds separate from its own" and was using the durable power of attorney it received to treat Happy Days and Kingsway "as one and the same." AA at 1215. At the hearing, Kingsway's attorney stated that if the court decided to dismiss or convert the bankruptcy action, Kingsway would prefer dismissal. AA at 1219.

On June 22, 2015, the bankruptcy court entered an order dismissing the case for cause under 11 U.S.C. § 1112(b)(1). The court enumerated various reasons for its decision, first, finding that Kingsway "ha[d] continually failed to comply with court orders and or fulfill its responsibilities as a debtor-in-possession" by paying Sobayo's personal expenses. AA at 987. Specifically, the court found that Kingsway had not provided any credible evidence of the business's expenses or income. *Id.* Second, the court found that Kingsway's failure to disclose its "bizarre arrangement" with Happy Days or property held in trust of another until late in the bankruptcy proceedings was problematic and suspicious. *Id.* Third, the court noted that Kingsway had been purchasing real property for itself without disclosing those transactions to the court or creditors—behavior that "inspires mistrust." AA at 988-89. Finally, the court remarked that Sobayo's behavior throughout the bankruptcy proceedings indicated that he "believe[d] that he [could] use [Kingsway's] assets in whatever manner he [saw] fit . . . . And when the Court rightfully ask[ed] questions, it receive[d] indignance, further obfuscation, and little detail in response." AA at 989. Kingsway filed this timely appeal, urging that its bankruptcy case be reinstated.

On January 4, 2016, Kingsway filed an application for a TRO, seeking to stay the effect of the dismissal of the bankruptcy action. In particular, Kingsway seeks to prevent Sosa's detainer action in San Mateo Superior Court from proceeding, which an active bankruptcy case would

accomplish. *See* 11 U.S.C. § 362.

## III.   LEGAL STANDARD

28 U.S.C. § 158(a)(1) confers jurisdiction on this court to adjudicate this bankruptcy appeal. An order dismissing or converting a Chapter 11 bankruptcy case to a Chapter 7 case is a final and appealable order. *Rosson v. Fitzgerald (In re Rosson)*, 545 F.3d 764, 770 (9th Cir. 2008); *YBA Nineteen, LLC v. IndyMac Venture, LLC (In re YBA Nineteen, LLC)*, 505 B.R. 289, 298 (S.D. Cal. 2014).

This court reviews "whether the cause for dismissal of a Chapter 11 case under 11 U.S.C. § 1112(b) is within the contemplation of that section of the Code." *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir.1994). However, the bankruptcy court's decision to dismiss a Chapter 11 case may not be overturned absent an abuse of discretion. *Id.* at 828. A bankruptcy court abuses its discretion if that decision fails a two-part test. *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir.2009) (en banc); *see also In re Prometheus Health Imaging, Inc.*, No. BAP CC-14-1576-FKIKU, 2015 WL 6719804, at *3 (B.A.P. 9th Cir. Nov. 2, 2015). The first step "is to determine de novo whether the [bankruptcy] court identified the correct legal rule to apply." *Hinkson*, 585 F.3d at 1262. The second step "is to determine whether the [bankruptcy] court's application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.* (internal quotation marks and footnote omitted). If the bankruptcy court committed any of these three errors, then the court "ha[s] a definite and firm conviction that" the bankruptcy court made a mistake or made a decision that "was not among its permissible options, and thus that its abused its discretion by making a clearly erroneous finding of fact." *Id.*

To obtain preliminary relief, a plaintiff must "establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 21–22 (2008). The Ninth Circuit has clarified, however, that courts in this Circuit should still evaluate the likelihood of success on a "sliding scale." *All. for*

*Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011) ("[T]he 'serious questions' version of the sliding scale test for preliminary injunctions remains viable after the Supreme Court's decision in *Winter*."). As quoted in *Cottrell*, that test provides that, "[a] preliminary injunction is appropriate when a [petitioner] demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor," provided, of course, that "[petitioners] must also satisfy the other [*Winter*] factors" including the likelihood of irreparable harm. *Id.* at 1135.

### IV.   DISCUSSION

Section 1112(b)(1) permits a bankruptcy court to "convert a case . . . to a case under chapter 7 or dismiss a case[,] whichever is in the best interests of creditors and the estate, for cause." "Cause" is undefined, but the statute includes a nonexclusive list of factors that may constitute "cause," including "gross mismanagement of the estate," "failure to maintain appropriate insurance that poses a risk to the estate or to the public," and "failure to comply with an order of the court." *See* 11 U.S.C. § 1112(b)(4)(B), (C), (E). "The bankruptcy court has broad discretion in determining what constitutes 'cause' under section 1112(b)." *Sullivan v. Harnisch (In re Sullivan)*, 522 B.R. 604, 614 (9th Cir. B.A.P. 2014).

#### A.   *Sua Sponte* Dismissal

Kingsway insists that 11 U.S.C. § 1112(b) does not permit bankruptcy courts to dismiss or convert cases absent a request by a party in interest. Indeed, the text of the statute suggests as much: "on request of a party in interest . . . a court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter." 11 U.S.C. § 1112(b)(1). Relying on the text of the statute, a Ninth Circuit Bankruptcy Appellate Panel has held that "the court cannot dismiss on its own motion." *Warner v. Universal Guardian Corp. (In re Warner)*, 30 B.R. 528, 529 (9th Cir. B.A.P. 1983).

Since *In re Warner*, however, Congress made significant changes to the bankruptcy code that call into question the vitality of *In re Warner*'s holding. In 1986, Congress amended 11 U.S.C. § 105(a) to permit courts to "issue any order process, or judgment that is necessary or

ORDER AFFIRMING THE ORDER OF DISMISSAL
CASE NO. 15-cv-03138-RS

appropriate to carry out the provisions of this title." Indeed, § 105(a) now explicitly states: "No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." Since the adoption of the 1986 amendment, a Ninth Circuit Bankruptcy Appellate Panel suggested that the amendment superseded *In re Warner*. *See In re Rubenstein*, 71 B.R. 777, 779 (B.A.P. 9th Cir. 1987) ("Until such time as the amendment to 11 U.S.C. § 105 becomes applicable in Arizona *Warner* is controlling law and a bankruptcy court may not convert or dismiss a case on its own motion."). All other courts to consider the effect of the amendment to § 105(a) have concluded the same. *See, e.g.*, *Argus Grp. 1700, Inc. v. Steinman (In re Argus Grp. 1700)*, 206 B.R. 757, 763 (E.D. Pa. 1997) (concluding that cases holding that courts lack the power to dismiss cases *sua sponte* are inapposite because they precede the 1986 amendments to § 105(a)); *In re SB Properties, Inc.*, 185 B.R. 206, 208 (Bankr. E.D. Pa. 1995) ("[T]his Court views those decisions which uphold the Bankruptcy Court's authority to dismiss a case on its own initiative as representing the better view."). Clear authority therefore finds that § 105 abrogated the holding of *In re Warner*, and so the bankruptcy court acted within its authority under 11 U.S.C. § 105 by dismissing Kingsway's bankruptcy case *sua sponte*.[1]

### B.     Notice and Hearing

Kingsway asserts that the bankruptcy court did not afford it sufficient notice and hearing before issuing the notice of dismissal as required by 11 U.S.C. § 1112(b). The bankruptcy code defines "notice and hearing" as "after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances." 11 U.S.C. § 102(a)(1). Furthermore, the court is authorized to "act without an actual hearing if such notice is given properly and if (i) such a hearing is not requested timely by a party in interest; or (ii) there is

---

[1] The record is not entirely clear as to whether the court acted on its own. Sosa twice requested dismissal of the bankruptcy case. *See* AA at 1112-12; 1217-18.

insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act." *Id.* § 102(a)(1)(B). Accordingly, the Ninth Circuit Bankruptcy Appellate Panel has acknowledged that "the concept of notice and hearing is flexible and depends on what is appropriate in the particular circumstance." *Tennant v. Rojas (In re Tennant)*, 318 B.R. 860, 870 (9th Cir. B.A.P. 2004).

Typically, parties receive fourteen days' notice before hearings under Federal Rule of Bankruptcy Procedure 4001. Kingsway contends that the bankruptcy court's decision to deviate from the rule was prejudicial. The trouble is that Kingsway has not identified how the additional fourteen days would have permitted it to unearth additional evidence to show that it had been managing the estate appropriately. Nor does it follow that deviation from a rule of thumb deprives a party of adequate notice. Absent a showing that an additional fourteen days would have made a difference, Kingsway has not demonstrated that the bankruptcy court abused its discretion.

### C. Cause for Dismissal: Gross Mismanagement and Failure to Follow Court Orders

Kingsway insists that the record does not support a finding of gross mismanagement of the estate within the meaning of 11 U.S.C. § 1112(b)(1) when the debtor has proposed a plan to pay all creditors in full. Kingsway's principal argument is that Congress added "gross mismanagement of the estate" to the definition of "cause" to dismiss or convert a chapter 11 case as part of the Bankruptcy Abuse Prevention and Consumer Protection Act, Pub. L. 109-8, Title VI, § 422(a),119 Stat. 23 (Apr. 20, 2005), which aimed to reduce the number of consumer bankruptcy filings and to maximize creditors' recovery, *Top Rank, Inc. v. Ortiz (In re Ortiz)*, 400 B.R. 755, 771 n.24 (Bakr. C.D. Cal. 2009). That purpose, Kingsway contends, informs how courts must interpret "gross mismanagement" and therefore precludes such a finding when the debtor has introduced a plan to pay creditors in full. In addition, Kingsway argues that compliance with 11 U.S.C. § 308's debtor reporting requirements—even sloppy compliance—precludes a finding of gross mismanagement.

The definition of "gross mismanagement of the estate," is not so limited.  Bankruptcy courts have found gross mismanagement in cases where debtors have not maintained an effective corporate management team, *In re Products Int'l Co.*, 395 B.R. 101, 111 (Bankr. D. Ariz. 2008); failed to follow through on their fiduciary duties under chapter 11, including obtaining credit or financing outside the ordinary course of the debtor's business, *In re Wallace*, No. 09-20496-TLM, 2010 WL 378351, at *4 (Bankr. D. Idaho Jan. 26, 2010) *aff'd,* No. 09-20496-TLM, 2011 WL 1230535 (D. Idaho Mar. 30, 2011); filed monthly reports without closely monitoring them; or where the business lacks effective management, *In re Creech*, 538 B.R. 245, 251 (Bankr. E.D.N.C. 2015) (collecting cases).

More to the point, here, the bankruptcy court did not limit its findings of gross mismanagement to sloppy accounting.  The bankruptcy court stated that information regarding the nature of Kingsway's business and source of income remained elusive throughout the bankruptcy proceedings.  AA at 988-89.  Initially, Kingsway stated that it runs a rent-to-own automobile service with customers paying a monthly fee to use Kingsway's cars.  The evidence, however, reflected that the cars supposedly belonging to the business were purchased in the name of Sobayo and his wife.  Kingsway never submitted any documentary evidence of rent-to-own customer contracts, but instead submitted car-payment and auto-insurance invoices none of which were in Kingsway's name.  AA at 1212-13.

Kingsway apparently also operates as a construction business, a real estate investment business, and a securities services business.  *See* AA at 1212-14.  Yet Kingsway never provided a proper record of income from each portion of these businesses.  For example, the bankruptcy court discovered that Kingsway had entered into a contract to purchase real estate after filing for bankruptcy, supposedly on behalf of a client.  However, Kingsway never provided any documentary evidence that it was holding real property in trust for another in its statement of financial affairs.  AA at 1214.  Finally, Kingsway's security services business appears to be

generated entirely by Happy Days Security Services[2] over which Kingsway has durable power of attorney. *See* AA at 1215-16. Kingsway uses the funds generated by Happy Days as its own without a contract in place. *Id.* That the precise source of Kingsway's income remains a mystery after so many months of litigation strongly supports the bankruptcy court's finding of gross mismanagement.

Not only did the nature of Kingsway's business prove hard to pin down, but the bankruptcy court also found that Sobayo was using Kingsway's accounts to pay his and his wife's personal expenses. Despite Kingsway's protestations to the contrary, the record adequately supports this finding. *See* AA at 1106-07. Paying personal expenses, ineffective business management, and problematic financial disclosures all constitute gross mismanagement within the meaning of 11 U.S.C. § 1112(b)(1). The bankruptcy court, therefore, did not err by dismissing Kingsway's chapter 11 bankruptcy case.

In addition, there is adequate evidence in the record to support the bankruptcy court's finding cause to dismiss the actions for failure to follow court orders pursuant to 11 U.S.C. § 1112(b)(4)(E). Specifically, the bankruptcy court ordered Kingsway to provide documentation about "[t]he exact nature of [its] business." AA at 921. In particular, when the court ordered Kingsway to provide information about whether it segregated funds between it and Happy Days Security Services, AA at 921, Kingsway failed to do so, *see* AA at 939-41, 959-69, 1215-17.

Kingsway argues that the bankruptcy court improperly chose to ignore and to disbelieve Sobayo's declaration as positive evidence about Kingsway's businesses. "Positive, uncontradicted testimony as to a particular fact should control the decision of the court unless it is inherently improbable, unreasonable or questionable." *Dudley v. United States*, 428 F.2d 1196, 1202 (9th Cir. 1970). Kingsway insists that Sobayo's declarations cannot be so characterized, and therefore the bankruptcy court abused its discretion by making factual findings to the contrary.

---

[2] The record does not make clear whether Happy Days Security Services and Happy Days Protective Patrol are the same company or connected in any way.

The bankruptcy court did not dismiss Kingsway's bankruptcy case simply because it chose to ignore Sobayo's testimony. It found cause, in addition, to dismiss the case because Kingsway had failed to provide necessary disclosures in accordance with its fiduciary duty. *See* AA at 988 ("Debtor has failed to disclose any property held in trust for another."). Moreover, the court concluded that Kingsway was not being forthcoming with necessary information with which to make the appropriate disclosures and respond to court orders, thereby bolstering a finding of gross mismanagement. AA at 989 ("Debtor's counsel is competent and scrappy but, as he conceded on the record today, his client is not keeping him fully informed as to its operations or giving him the information necessary to respond to this Court's concerns or manage the case, let alone assist the Debtor in developing and implementing a strategy for exiting Chapter 11."). Rather than ignoring or disbelieving uncontradicted and unquestionable evidence, the court confronted evidence which it found to be seriously lacking.

Finally, Kingsway insists that the bankruptcy court erred by finding that Kingsway made unauthorized post-petition transfers without consulting California contract law. Even if that were the case, the error would be harmless because the bankruptcy court identified ample separate reasons to dismiss Kingsway's bankruptcy case. In sum, the bankruptcy court's decision to dismiss this bankruptcy case was not an abuse of discretion in light of the extensive evidence of Kingsway's failure to comply with court orders.

D.  **Best Interest of Estate and Creditors**

Bankruptcy courts "shall convert a [chapter 11] case . . . to a case under chapter 7 or dismiss a [chapter 11] case[,] whichever is in the best interests of the creditors and the estate, for cause. 11 U.S.C. § 1112(b)(1). Once the bankruptcy court determines there is cause to convert or dismiss the chapter 11 case, "it must also: (1) decide whether dismissal, conversion, or the appointment of a trustee or examiner is in the best interests of creditors and the estate; and (2) identify whether there are unusual circumstances that establish that dismissal or conversion is not in the best interests of the creditors." *Sullivan v. Harnisch (In re Sullivan)*, 522 B.R. 604, 612 (B.A.P. 9th Cir. 2014). Thus, when considering whether to convert or dismiss a bankruptcy case

under § 1112(b)(1), the bankruptcy court has three options: permit the debtor to propose a plan; convert the case to chapter 7, or dismiss the bankruptcy case. *Id.* at 613. Failure to consider which of these three options is in the best interest of the creditors and estate is an abuse of discretion. *Id.* at 612.

Kingsway insists that the bankruptcy court failed to consider those three options. The record belies that assertion. First, the bankruptcy court understood the options available to it; Kingsway specifically told the court that it would prefer dismissal to conversion from chapter 11 to chapter 7. AA at 1219. Second, the bankruptcy court's order of dismissal specifically addresses how Kingsway's mismanagement of the estate undermines the creditors' interests. In particular, the bankruptcy court noted that Kingsway "owes fiduciary obligations to its creditors and must behave in a fully transparent, rational manner." The court found that Kingsway had failed to uphold its fiduciary duty by withholding information about "the true nature of . . . its business" until "nearly 9 months into the case." AA at 988-89. Thus, the bankruptcy court specifically found that continuing the bankruptcy proceedings was not in the creditors' best interests.

Kingsway also argues that the bankruptcy court abused its discretion because it failed to consider which option was in the best interest of all creditors and gave great weight to Sosa's wishes. "When determining the best interest of the creditors under § 1112(b), the Code's fundamental policy of achieving equality among creditors must be a factor considered, and it is not served by merely tallying the votes of the unsecured creditors and yielding to the majority interest." *In re Sullivan*, 522 B.R. at 613 (internal quotation marks omitted). Although Sosa was the only creditor to appear at the hearing for the order to show cause, the record makes clear that the bankruptcy court considered the interests of all creditors involved. In addition, the bankruptcy court specifically stated that "*[c]reditors* have been delayed long enough" by the bankruptcy proceedings. AA at 989 (emphasis added). The court did not merely address the harmfulness of Kingsway's evasiveness to Sosa, the primary creditor; it expressly found that Kingsway's behavior and the behavior of its responsible individual negatively impacted *all* creditors. The

1  bankruptcy court did not therefore abuse its discretion to choose to dismiss the chapter 11 case.

### E.  Kingsway's TRO Application

Kingsway has not prevailed on the merits of this bankruptcy appeal, and therefore he cannot show that he is likely to succeed on the merits as he must to obtain a temporary stay of the order of dismissal.  *Winter*, 555 U.S. 7, 21–22 (2008).  Accordingly, his application for a TRO is denied.

### V.  CONCLUSION

Kingsway has not demonstrated that the bankruptcy court abused its discretion by dismissing its bankruptcy case.  There is sufficient evidence in the record that supports the bankruptcy court's finding that Kingsway's estate was grossly mismanaged and that Kingsway failed to comply with court orders.  The bankruptcy court's order of dismissal must therefore be affirmed.  In addition, because Kingsway did not prevail on the merits, its application for a TRO must also be denied.

**IT IS SO ORDERED**.

Dated:  January 6, 2016

_____
RICHARD SEEBORG
United States District Judge